UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA CUNNINGHAM,

    Plaintiff,

v.

BLUE CARE NETWORK OF MICHIGAN,

    Defendant.
                                        /

Case No. 07-11666

Honorable Nancy G. Edmunds

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [7]
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [9]**

This contract dispute involving a question of federal tax law comes before the Court on the parties' cross motions for summary judgment. Because the parties' settlement agreement provided that Defendant "shall make appropriate tax withholdings as required by law," and did so, Plaintiff's motion for summary judgment is DENIED and Defendant's cross motion for summary judgment is GRANTED.

**I.    Facts**

Plaintiff was employed by Defendant Blue Care Network of Michigan ("Blue Care Network") for more than thirty-six years. She was terminated on October 17, 2006. Plaintiff and Blue Care Network subsequently entered into an Agreement, Waiver and Release, where Plaintiff agreed to release Blue Care Network from all claims in connection with her termination, and Defendant Blue Care Network agreed to pay Plaintiff "the gross sum of $84,742.72" within 30 days after Plaintiff signed the Agreement. (Def.'s Ex. 2, Agreement at ¶¶ 2, 3.) The Agreement further provided that Blue Care Network "shall make

appropriate tax withholdings as required by law." (*Id.* at ¶ 3.) Plaintiff signed the Agreement on December 22, 2006. On January 30, 2007, Defendant tendered a settlement check to Plaintiff's counsel for the net amount of $42,142.06 after withdrawing withholdings from the gross settlement amount of $84,170.03. (Def.'s Ex. 3.) Plaintiff cashed the settlement check within days. (Def.'s Ex. 4.)

This matter is now before the Court on the parties' cross-motions for summary judgment. Plaintiff's motion argues that Defendant breached the Agreement when it deducted an excessive amount of federal withholding taxes from Plaintiff's lump sum payment and thus should be required to file the necessary forms with the IRS to correct this error and also pay Plaintiff the approximately $20,000 excess amount deducted. Defendant, on the other hand, argues that there is no breach, that it properly applied the method allowed for deducting withholding taxes for the lump sum payment, that at most it made a minor $636 mathematical error, and thus Plaintiff has suffered no damages because this amount will be either be refunded to Plaintiff or be applied to her tax liability for 2007.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

The single issue before the Court is whether the lump sum "settlement" payment to Plaintiff falls within the definition of "supplemental wages" or "regular wages" under the Internal Revenue Code regulations ("Treasury Regulations"). Defendant argues that the payment constitutes "supplemental wages" whereas Plaintiff argues that it constitutes "regular wages." This Court agrees with Defendant; the lump sum payment to Plaintiff upon her dismissal falls within the Treasury Regulations' definition of "supplemental wages."

The Court begins by acknowledging that the lump sum payment to Plaintiff as a result of her dismissal constitutes "wages." Under 26 C.F.R. ("Treas. Reg.") § 31.3401(a)-1(b)(4),

3

"dismissal payments" are defined as "[a]ny payments made by an employer to an employee on account of dismissal, that is, involuntary separation from the service of the employer, constitute wages regardless of whether the employer is legally bound by contract, statute, or otherwise to make such payments." The Court next examines the definitions of "regular" and "supplemental" wages.

"Regular wages" are defined as "amounts that are paid at a regular hourly, daily, or similar periodic rate (and not an overtime rate) <u>for the current payroll period</u> or at a predetermined fixed determinable amount <u>for the current payroll period</u>." Treas. Reg. § 31.3402(g)-1(a)(1)(ii) (emphasis added). "Supplemental wages," on the other hand, are defined as "all wages paid by an employer that are not regular wages. Supplemental wages include wage payments made without regard to an employee's payroll period, but also may include payments made for a payroll period." Treas. Reg. § 31.3402(g)-1(a)(1)(i). Examples of supplemental wages include bonuses, back pay, and commissions. *Id.* The Treasury Regulation further provides that "[a]mounts that are described as supplemental wages in this definition are supplemental wages regardless of whether the employer has paid the employee any regular wages during either the calendar year of the payment or any prior calendar year." *Id.*

Applying the above definitions, Defendant's lump sum payment to Plaintiff in January 2007 constitutes "supplemental wages" for federal income tax purposes. The amount was not related to a current payroll period and thus does not fall within the definition of "regular wages." Rather, it is akin to the examples provided under the definition for "supplemental wages." Accordingly, Defendant was to apply the withholding methods set out in the Treasury Regulations for supplemental wages.

Treasury Regulation § 31.3402(g)-1(a)(vi) provides that "[t]he calculation of the amount of the income tax withholding with respect to supplemental wage payments is provided for under paragraphs (a)(2) through (a)(7) of this section."

As set out in Treas. Reg. § 31.3402(g)-1(a)(5), if the supplemental wages are less than $1 million and the flat-rate method, § 31.3402(g)-1(a)(7), is also available, then the employer can choose to use either that flat-rate method or the aggregate procedure set out in § 31.3402(g)-1(a)(6). Both of these conditions were satisfied here, allowing Defendant to choose between the two withholding methods.

Three conditions must be met before the optional flat-rate withholding method can be applied: (1) the supplemental wage payments during a calendar year must not exceed $1 million; (2) the supplemental wages cannot be paid concurrently with regular wages or are separately stated on the payroll records of the employer; and (3) income tax has been withheld from regular wages of the employee during the calendar year of the payment or the preceding calendar year. Treas. Reg. § 31.3402(g)-1(a)(7)((i)(A)-(C). These conditions are met here: (1) the supplemental wage payment does not exceed $1 million; (2) the supplement wages were not paid concurrently with regular wages; and (3) income tax was withheld from regular wages of Plaintiff during the preceding calendar year.

Under the optional flat-rate method, an employee's W-4 is ignored and federal income tax withholdings are determined by applying a 25% flat rate to the federal taxable amount of supplemental wages. Treas. Reg. § 31.3402(g)-1(a)(7)(ii), (iii). Defendant did not choose to apply the optional flat-rate method of withholding.

Defendant, as allowed under Treas. Reg. § 31.3402(g)-1(a)(5), chose to apply the aggregate procedure for withholding on Plaintiff's supplemental wages. It then applied it in the manner set out in the appropriate IRS Publications.

The January 24, 2007 severance payment to Plaintiff was $84,742.78. The federal taxable amount was $84,170.03 because the taxable severance pay was reduced by a pre-tax 401(k) contribution of $3,389.71 and increased by $2,816.96 for taxable employer paid life insurance. (Def.'s Ex. 3.)

Although the federal income tax withheld under the optional flat-rate methodology would have been $21,042.51 as opposed to the $27,306 actually withheld under the aggregate methodology, the Treasury Regulations provided Defendant with the option to chose either method. Defendant chose the aggregate methodology because the software system it used for payroll calculation purposes was programmed to use that method and not the optional 25% flat-rate withholding method. Because the Treasury Regulations provided Defendant with the right to use either method, it cannot be held in breach for choosing one over another.

The aggregate method of withholding does take into consideration Form W-4 submitted by the employee. Treas. Reg. § 31.3402(g)-1(a)(6)(ii). Its application is explained in IRS Publication 15 (Circular E), Employer's Tax Guide ("Publication 15"). (Def.'s Ex. 6.)

Plaintiff's W-4 employee withholding certificate shows that she was married with one exemption. (Def.'s Ex. 7.) Plaintiff does not challenge the required withholdings for FICA, Michigan income tax withholding, or the City of Detroit income tax withholding. Accordingly, below is how the federal withholding tax was calculated on Plaintiff's supplemental wages

6

of $84,170.03. Defendant concedes that, when properly recalculated, it made an error in the amount of $636.11. (The Court calculates the error to be $642.09). Defendant then asserts that the correct amount of federal tax withholding under the aggregate method should be $26,669.88. (The Court calculates the correct amount to be $26,664.00; a difference of $5.88). With the correction of these minor mathematical errors, the Court finds that Defendant properly deducted the amount of federal withholding under the aggregate method.

Sections 7 and 8 on pages 12-13 of Publication 15 clarify that, when there is no regular payroll period (e.g., the January 24, 2007 severance check paid to Plaintiff), an employer should withhold under the aggregate method based on a daily or miscellaneous payroll period. Specifically, Section 7 addresses the definition of supplemental wages and the two methods available for withholding federal income tax. Section 8 provides that "[w]hen you do not have a regular payroll period, withhold the tax as if you paid wages for a daily or miscellaneous payroll period. . . . If the wages are unrelated to a specific length of time . . ., count back the number of days from the payment period to the latest of: [1] the last wage payment made during the same calendar year, [2] the date employment began, if during the same calendar year, or [3] January 1 of the same year." (Def.'s Ex. 6, Pub. 15 at 13.) Because Plaintiff's supplemental wages were unrelated to a specific length of time and paid on January 24, 2007, Defendant properly counted back to January 1, 2007, arriving at 23 days.

Defendant next turned to Section 16 of Publication 15 to determine the appropriate table for calculating the proper withholding allowance. (Def.'s Ex. 6, Pub. 15 at 35.) Because Plaintiff's supplemental wages exceed the amount shown in last bracket in the

7

table on pages 39-58, Defendant had to use the percentage method of withholding based on Table 8(b), located on page 38 of Publication 15. But first, Defendant had to reduce Plaintiff's supplemental wages by the amount of total withholding allowances in Table 5 on page 35 of Publication 15; i.e., $13.08.

Applying both Table 5 and Table 8(b), the calculation is as follows:

First, divide the amount of supplemental wages ($84,170.03) by 23 days = $3,659.57;

Next, subtract $13.80 (daily withholding allowance from Table 5). So $3,659.57 minus $13.80 = $3,645.77.

Finally, applying Table 8(b), the amount of income tax to be withheld per day is $363.87 plus 35% of excess over $1,373.10 ($3,645.77 minus $1,373.10 = $2,272.67 x .35 = $795.43). So, the amount to be withheld per day is $363.87 plus $795.43 = $1,159.30. $1,159.30 x 23 days = $26,664.00.

Defendant deducted $27,306.09 rather than $26,664.00, resulting in an excess deduction of $642.09.

Defendant argues that the excess deducted for withholding is insufficient to be considered a material breach and, in any event, Plaintiff has suffered no damages because she can easily request that the IRS refund this amount or apply it to her tax liability for 2007. This Court agrees with Defendant. Accordingly, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion is DENIED.

## IV. Conclusion

For the above-stated reasons, Plaintiff's motion for summary judgment is DENIED and

Defendant's motion for summary judgment is GRANTED. The case is DISMISSED.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: September 7, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 7, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager